**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**SUHA SHEHADEH, ET AL.**

**VERSUS**

**NOAH P. BERGERON, ET AL.**

**CIVIL ACTION NO.**

**19-228-JWD-EWD**

**NOTICE**

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 24, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **SUHA SHEHADEH, ET AL.** | **CIVIL ACTION NO.** |
| **VERSUS** | |
| | **19-228-JWD-EWD** |
| **NOAH P. BERGERON, ET AL.** | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Before the Court is the Motion to Remand to State Court (the "Motion"), filed by Plaintiffs Suha Shehadeh ("Suha"), Abdallah Shehadeh, individually and on behalf of their minor children, Hakeem Shehadeh ("Hakeem"), Ameelia Shehadeh ("Ameelia"), Tamer Shehadeh, Suhaib Shehadeh, and Mohammad Shehadeh (collectively, "Plaintiffs").[1] The Motion is opposed.[2] For the reasons set forth below, it is recommended[3] that the Motion[4] be denied and this matter referred for a scheduling conference.[5]

### I.     Facts and Procedural Background

On April 20, 2018, Plaintiffs filed a Petition for Damages ("Petition") against Noah P. Bergeron ("Bergeron"), Yokogawa Corporation of America ("Yokogawa"), and Sompo America Insurance Company ("Sompo") (collectively, "Defendants") in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.[6] Plaintiffs allegations are as follows: On or about May 23, 2017, Suha was driving on Louisiana Highway 42 in East Baton Rouge Parish when her vehicle collided with the vehicle driven by Bergeron and owned by his employer,

---

[1] R. Doc. 3.
[2] R. Doc. 5.
[3] The Fifth Circuit has held that "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review." *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016).
[4] R. Doc. 3.
[5] Entry of a scheduling order was deferred pending resolution of the Motion.  *See* R. Doc. 4.
[6] R. Doc. 1-2.

Yokogawa (the "Accident").[7] Bergeron was negligent in causing the Accident and his employer, Yokogawa, is vicariously liable for Bergeron's negligent driving, which occurred during the course and scope of his employment.[8] Sompo is liable as the insurance carrier for the vehicle driven by Bergeron.[9] Suha and the minors, Hakeem and Ameelia, sustained personal injuries, and seek damages, including but not limited to, "severe physical injury, severe emotional injury, pain and suffering, past and future medical expenses, loss of enjoyment of life," and other unspecified damages, as well as property damage to the vehicle.[10] The remaining Plaintiffs seek damages for loss of consortium, services, and society with/by Suha.[11]

On April 18, 2019, after the case had been pending in state court for nearly a year,[12] Sompo and Yokogawa[13] removed the matter to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a).[14] In the Notice of Removal, Defendant cited Plaintiffs' claims for generalized damages and acknowledge that such pleading is in conformance with Louisiana law, which prohibits Plaintiffs from quantifying their damages in their petitions.[15] Defendants then note their burden to "prove by a preponderance of the evidence that the amount in controversy exceeds $75,000."[16] Defendants claim that they first became aware that grounds for removal existed on

---

[7] R. Doc. 1-2, ¶¶ 7, 12, 16-17. (The Petition does not contain paragraphs numbered 8-11.)
[8] R. Doc. 1-2, ¶¶ 6, 12, 14-15.
[9] R. Doc. 1-2, ¶ 13.
[10] R. Doc. 1-2, ¶¶ 16-17.
[11] R. Doc. 1-2, ¶ 18.
[12] As the Notice of Removal was filed two days before the anniversary of the filing of Plaintiffs' Petition in state court, *i.e.*, April 20, 2018, *see* R. Doc. 1-2, it was timely filed with regard to the provisions of 28 U.S.C. § 1446(c)(1) (prohibiting removal of diversity actions "more than one year after the commencement of the action"). Plaintiffs do not argue this provision as a basis for the alleged untimeliness of the removal.
[13] Bergeron was not served until August 10, 2018. R. Doc. 1-2, pp. 62-63.
[14] R. Doc. 1, ¶¶ 5-10. The Notice of Removal adequately establishes diversity of citizenship among the parties. R. Doc. 1, ¶ 6 (Plaintiffs are domiciliaries of Louisiana); ¶ 7 (Bergeron is a Virginia domiciliary as of the time of removal (but was a Texas domiciliary at the time the Petition was filed); ¶ 8 (Yokogawa is a Delaware corporation with its principal place of business in Texas); ¶ 9 (Sompo is a North Carolina insurance company with its principal place of business in North Carolina). Plaintiffs have not disputed that the parties are diverse.
[15] R. Doc. 1, ¶¶ 11-14.
[16] R. Doc. 1, ¶ 12, *citing Gebbia v. Wal-Mart Stores, Inc.,* 233 F.3d 880, 882-83 (5th Cir. 2000).

April 16, 2019.[17] On that date, Defendants allege they received medical and billing records for Suha, which indicate that the amount in controversy likely exceeds the jurisdictional minimum, as follows:

> On or about April 16, 2019, undersigned counsel received medical and billing records from Dr. Isaza / Spine Specialists of Louisiana. Those records reflect that Plaintiff Suah (sic) Shehadeh has received injections, reportedly still remains symptomatic, with a new focus of injury to include work-up and treatment of her right hip, to include a recommended arthroscopic surgery and another orthopedic referral. Suha Shehadeh's past medical specials allegedly related to the incident in question are around $36,000 to date.
>
> While defendants deny liability or that plaintiffs suffered any injury, and deny that Plaintiffs are entitled to any damages, it is submitted that because of plaintiff Suha Shehadeh's change in circumstance regarding injections, new focus of injury with recommended arthroscopic surgery, as well as ongoing complaints and the nature of treatment to date, coupled with the amount of past medical specials, the amount in controversy exceeds $75,000.00. As a result, the requisite amount in controversy exists.[18]

Although Plaintiffs agree that the amount in controversy likely exceeds $75,000 exclusive of interest and costs,[19] Plaintiffs assert that remand is appropriate because the removal was untimely.[20]

---

[17] R. Doc. 1, ¶¶ 15-16. Defendants removed this case two days after they claim to have received Dr. Isaza's updated medical records.
[18] R. Doc. 1, ¶¶ 15-16, *citing* R. Doc. 1-2, excerpts from Suha's medical records from Dr. Isaza, *and see* R. Doc. 1, ¶ 18, *citing* 28 U.S.C. § 1446(b)(3). 28 U.S.C. § 1446(b)(3) provides that a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of a[n] …"other paper" from which it may first be ascertained that the case is one which is or has become removable."
[19] R. Doc. 1, ¶ 15; R. Doc. 3-1, pp. 5-10 (arguing that Defendants should have removed earlier based upon information received in discovery and Suha's deposition, which reflected that the amount in controversy requirement was met).
[20] R. Doc. 3-1.

## II.   Law and Analysis

### A.  Legal Standards

The time limits for filing a notice of removal, provided in the removal procedure rules of 28 U.S.C. § 1446(b), are as follows:

> (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
> ...
> (3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

With regard to triggering the 30-day time period from the defendant's receipt of the initial pleading, as provided in § 1446(b)(1), the Fifth Circuit has provided a bright line rule that "the thirty-day removal period under the first paragraph is triggered only where the initial pleading '*affirmatively reveals on its face* that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court.'"[21]  If a plaintiff wants the 30-day period to run from the defendant's receipt of the initial pleading, a plaintiff should place in that pleading "a specific allegation that damages are in excess of the federal jurisdictional amount."[22]  The initial pleading

---

[21] *Scott,* 2015 WL 2137458, at *3, *citing Mumfrey v. CVS Pharmacy, Inc.,* 719 F.3d 392, 399 (5th Cir. 2013) (*quoting Chapman v. Powermatic, Inc.,* 969 F.2d 160, 163 (5th Cir. 1992) (emphasis added by *Mumfrey* )).

[22] *See Elkins v. Bradshaw*, No. 18-1035-JWD-EWD, 2019 WL 2096126, at *2 (M.D. La. Apr. 24, 2019), *report and recommendation adopted,* No. 18-1035-JWD-EWD, 2019 WL 2092564 (M.D. La. May 13, 2019) *citing Chapman*, 969 F.2d at 163 and 2019 WL 2096126 at *2, n. 12: ("Such a statement would provide notice to defendants that the removal clock had been triggered, but would not run afoul of state laws, such as Louisiana, that prohibit pleading unliquidated damage amounts. *See* La. C.C.P. art. 893. In *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 210 (5th Cir. 2002), the Fifth Circuit addressed *Chapman* and suggested, in dicta, that specific damage estimates in the initial pleading that are less than the minimum jurisdictional amount can be combined with other unspecified damage claims to trigger the time limit for filing the notice of removal. In *Mumfrey*, a subsequent panel criticized this portion of

4

in this action does not contain a specific allegation that damages are in excess of the federal jurisdictional amount.[23] Accordingly, the 30-day period for removing the action was not triggered by service of the initial pleading, which is not disputed by any party.

With regard to triggering the 30-day time period from the defendant's receipt "of an amended pleading, motion, order, or other paper," as provided in § 1446(b)(3), the Fifth Circuit has provided that the 30-day removal period is triggered only where jurisdiction is "unequivocally clear and certain" from the document.[24] Courts have found that the standard for triggering removal based upon a subsequent "amended pleading, motion, order, or other paper" as provided in § 1446(b)(3), such as discovery responses,[25] is at least as strict as the standard for triggering the 30-day period for removal based on an initial pleading, as provided in § 1446(b)(1).[26]

---

*Bosky*, questioned the authority upon which it relied, and noted that if there is a conflict between *Chapman* and *Bosky*, *Chapman* controls as the earlier opinion. *Mumfrey*, 719 F.3d at 400 (characterizing this portion of *Bosky* as 'a line that has become the source of significant confusion'). *See Clark v. Dolgencorp*, No. 13-2336, 2014 WL 458220, *3 (W.D. La. Feb. 4, 2014) ('*Mumfrey* expressly rejected the dicta in *Bosky* that was the cause of confusion and instead reiterated that the 'bright line rule' set forth in *Chapman* applies').")

[23] Plaintiffs' allegations concerning their damages are generic and devoid of any description of the medical injuries they allegedly sustained, and there are no allegations regarding the minors' alleged injuries at all. *See* R. Doc. 1-2, ¶¶ 16-18. Thus, solely from the face of the Petition, it does not appear that the amount in controversy exceeds $75,000, exclusive of interest and costs. However, the amount in controversy is likely met based on other evidence in the record and no party disputes this. S*ee* the discussion below at n.41.

[24] *See Scott,* 2015 WL 2137458, at *4, *citing Bosky,* 288 F.3d at 211 (stating that the statutory term "ascertained" means "unequivocally clear and certain").

[25] Discovery responses have been held to be "other paper" within the meaning of 28 U.S.C. § 1446(b)(3). *See Chapman*, 969 F.2d at 165.

[26] *See Scott,* 2015 WL 2137458, at *4, n. 2 ("In *Bosky,* the court indicated that the standard to trigger the second 30 day removal period (as is at issue in the instant case) 'seems to require a *greater* level of certainty' than the *Chapman* standard used to determine whether a case must be removed based on the allegations contained in the initial pleading. *Id.* at 211 (emphasis added). The Fifth Circuit has subsequently held that *Bosky's* discussion of the standards for triggering the initial 30-day removal period constituted dicta because the issue before the *Bosky* court was whether removal was timely pursuant to the language of what is now § 1446(b)(3), and not whether removal was timely pursuant to the language of what is now § 1446(b)(1). *See Mumfrey,* 719 F.3d at 399 n. 11 (citing *Bosky,* 288 F.3d at 209–11). The *Mumfrey* court criticized the *Bosky* decision to the extent it stated that the bright line rule announced in *Chapman* was less strict than the requirement for triggering the 30-day period with regard to amended pleadings and other documents. *Id.* at 400. While the *Mumfrey* court does not use the 'unequivocally clear and certain' language found in *Bosky,* its ultimate holding that the 30-day removal period was triggered by receipt of an amended petition seeking $3,575,000 in damages and not the initial petition, which did not specifically request any amount of damages, suggests that the standards for triggering the 30-day period are virtually identical (if not in fact identical) if removal is based upon the initial pleading or a subsequent paper. *See Smith v. Wal–Mart Louisiana, LLC,* No. 13–2368, 2013 WL 4781778, at *3 (W.D. La. Sept. 5, 2013) (*Bosky* should be read as imposing a trigger for the second removal period that is *at least* as strict as that set forth in *Chapman*.').")

**B. The Notice of Removal is Timely**

Plaintiffs argue that Defendants were put on notice that Plaintiffs' claims were in excess of the requisite jurisdictional amount on several earlier occasions, beginning with Plaintiffs' June 27, 2018 discovery responses and the over four hundred pages of documents/medical records produced.[27] In particular, Plaintiffs assert that the records initially produced showed that Suha had a disc herniation, disc bulges, and had received injections, such that, even in the absence of a surgical recommendation, the amount in controversy was satisfied because Suha's "medical bills showed consistent treatment with larger medical charges."[28] Alternatively, Plaintiffs argue that Defendants were on notice that the case was removable based on Plaintiffs' September 14, 2018, December 21, 2018, and January 23, 2019 productions of additional medical records that showed consistent medical treatment, and ultimately, $31,933 in medical expenses,[29] and Defendants'

---

[27] *See* R. Doc. 3-1, pp. 3-6, *citing* Plaintiffs' June 27, 2018 discovery responses and medical records produced at R. Doc. 3-3, which Plaintiffs argue indicated that Suha: had multiple injuries following the accident, including right shoulder pain, lower back pain, and right leg pain; continued treating at Baton Rouge Rehab and the Baton Rouge Orthopedic Clinic and was still recovering from her injuries; had medical expenses totaling $22,213.85, including 71 physical therapy sessions, which was "unequivocally clear and certain" evidence; had an MRI that revealed disc bulges and facet arthropathy and a disc herniation at L4-L5; and had two epidural steroid injections. Plaintiffs also contend that the records indicated that Hakeem and Amelia had medical expenses totaling $1,375.90. Plaintiffs argue that the foregoing is "other paper," which put Defendants on notice that the amount in controversy was met such that Defendants should have removed within 30 days of Plaintiffs' June 27, 2018 responses, or alternatively, within 30 days of when Defendant Bergeron was served, *i.e.,* September 2018. R. Doc. 3-1, pp. 5-6 *and see* R. Doc. 1-2, p. 63 (return receipt signed by Bergeron on August 10, 2018).

[28] According to Plaintiffs, the amount in controversy can be established for a plaintiff with a disc herniation but no surgery recommendation if there is evidence of medical bills showing consistent treatment with larger medical expenses. *See* R. Doc. 3-1, p. 4, *citing Shelton v. Hallmark Trucking Insurance Company*, No. 17-1683-BAJ-EWD, 2018 WL 1998341, *4 (M.D. La. March. 27, 2018 (*citing Thibodeaux v. GEICO Advantage Insurance Company*, No. 16-158-JWD-EWD, 2016 WL 4055660 (M.D. La. July 8, 2016) (medical bills in excess of $45,000) *and Thomas Louis Dreyfus Commodities, LLC*, No. 15-394-SDD-RLB, 2016 WL 1317937 (M.D. La. March 11, 2016) (recommending denial of motion to remand where plaintiff submitted medical bills totaling $26,637.57 and alleged other injuries in addition to bulging and herniated discs). Plaintiffs also rely on several Louisiana cases for the proposition that plaintiffs with similar injuries have received state court awards in excess of $75,000. R. Doc. 3-1, p. 5, *citing Hebert v. Boesch*, 2015-1791 (La. App. 1 Cir. 06/03/16), 194 So.3d 798 ($75,000 general damage award for two disc bulges and conservative treatment); *Latulippe v. Braun*, 18-83 (La. App. 5 Cir. 8/10/18), 253 So.3d 820, 833 ($150,000 general damages awarded to plaintiff with disc bulges, pain, and an injection), and *Caskey v. Merrick Const. Co., Inc.,* 46,866 (La. App. 2 Cir. 3/14/12), 86 So.3d 186 (subsequent history omitted).

[29] *See* R. Doc. 3-1, pp. 6-8, asserting that Defendants waived removal after failing to remove despite receipt of subsequent medical records that "'are unequivocally clear and certain proof' that Plaintiffs' claims exceed the amount of controversy under 28 U.S.C. § 1332," including (1) Defendants' September 14, 2018 receipt of Suha's Moreau Physical Therapy records at R. Doc. 3-4, which showed additional therapy sessions, additional medical expenses of

February 9, 2019 receipt[30] of the transcript of Suha's deposition testimony, wherein Suha testified that her prior physician, Dr. Ferachi, recommended surgery.[31]

In contrast, Defendants argue that (1) Suha's testimony regarding an alleged surgery recommendation from Dr. Ferachi was not supported by the medical records, which do not contain such a recommendation;[32] and, (2) they were not able to ascertain that the action was removable until they received updated medical records from orthopedic surgeon Dr. Isaza, related to additional "work up" for Suha's more recently realized injuries to her right hip[33] and a surgery recommendation.[34] Defendants assert that Plaintiffs' Petition only alleged generalized damages, which did not provide sufficient information for Defendants to determine if the matter was removable, and that "general damages awards for lumbar complaints/disc injuries, with injections and complaints of residual pain are varying," citing competing Louisiana cases featuring awards to similarly-injured plaintiffs for less than $75,000.[35] Defendants disagree that Suha's continued medical treatment, by itself, was enough to justify removal. Defendants contend that they timely

---

$2,181, and that Suha was still in pain; (2) Defendants' December 21, 2108 receipt of additional medical records at R. Doc. 3-5, which showed Suha underwent six facet injections on June 5, 2018, incurred $4,547.55 in additional medical expenses, and was still in pain; and (3) Defendants' January 23, 2019 receipt of medical records from Spine Specialists of Louisiana, LLC at R. Doc. 3-6, which reflected Suha's four visits with orthopedic surgeon Dr. Isaza, an additional $1,615 in medical expenses, chiropractic and physical therapy, and a recommendation for an SI injection.

[30] *See* R. Doc. 3-7.

[31] R. Doc. 3-1, pp. 8-10, asserting that Suha's January 23, 2019 deposition established that Suha was in pain, her injuries "have greatly impacted her life" and daily activities, she received six injections, her husband and children have suffered from loss of her services, and she received a surgical recommendation. *See* deposition transcript at R. Doc. 3-7. Plaintiffs argue that cases featuring disc herniations with surgery recommendations "typically far exceed the amount in controversy under 28 U.S.C. § 1332," *citing* Louisiana cases. R. Doc. 3-1, p. 9.

[32] R. Doc. 5, p. 1, *citing* Dr. Ferachi's medical records at R. Doc. 5-1.

[33] Defendants aver that Suha originally complained of injuries to her shoulder and upper back, then complained of injuries to her lower back, and only recently complained of injuries to her right hip. R. Doc. 5, p. 2.

[34] R. Doc. 5, p. 2, *citing* Dr. Isaza's medical records at R. Doc. 5-2, and particularly R. Doc. 5-2, p. 4 (recommending orthopedic consultation and possible arthrosopy in connection with finding of potential acetabular labral tear).

[35] R. Doc. 5, pp. 3-4, *citing Guillory v. Saucier*, 11-745 (La. App. 3 Cir. 12/7/11), 79 So.3d 1188 ($30,000 general damage award to plaintiff with lumbar herniation, facet changes, ESI and radio frequency ablations, residual complaints, and past medical expenses of $68,141.25) (unreported state district court decisions omitted).

7

removed within thirty days of Defendants' receipt of updated medical records that contain "medical evidence of an official notation of a possible arthroscopy."[36]

This is not a case where a plaintiff "affirmatively stated in an amended pleading or other paper that [her] damages exceeded the jurisdictional requirement, thus triggering the 30-day period for removal pursuant to § 1446(b)(3)." Plaintiffs' discovery responses, successive productions of medical records, and deposition testimony do not satisfy the "unequivocally clear and certain" standard.[37] Regarding production of Suha's medical records, "if a defendant has to analyze and dissect medical treatment records to divine whether the nature and cause of a plaintiff's injuries satisfy the amount in controversy requirement, then those papers do not suffice to trigger the 30 day time period."[38] Plaintiffs' responses to Defendants' discovery requests do not provide sufficient information "from which it may first be ascertained that the case is one which is or has become removable."[39] Plaintiffs have not directed the Court to any portion of the discovery responses that make it "unequivocally clear and certain" that the amount in controversy requirement is satisfied or that Plaintiffs were otherwise seeking an amount exceeding the jurisdictional requisite. "Relatedly, if a defendant has to conduct independent research by consulting 'quantum books,' then the discovery responses are not sufficiently unequivocally clear and certain to trigger the 30-day removal period."[40]

---

[36] R. Doc. 5, p. 4.
[37] *Elkins,* 2019 WL 2096126, at *4, n. 23, *citing Scott*, 2015 WL 2137458, at *5 (finding neither plaintiff's discovery responses nor deposition testimony triggered the deadline to remove) (*citing Mumfrey,* 719 F.3d at 400) (timing rule triggered where Amended Petition sought $ 3,575,000 in damages); *Daniel*, 2016 WL 6562073, at *4 (same).
[38] *Elkins,* 2019 WL 2096126, at *4, *citing Chandler v. Ruston Louisiana Hospital Co., LLC,* No. 14-121, 2014 WL 1096365, at *5 (W.D. La. March 19, 2014). *See also Daniel v. Lowe's Home Centers, LLC,* No. 16-374, 2016 WL 6562073, at *4 (M.D. La. Oct. 11, 2016), *report and recommendation adopted,* 2016 WL 6561565 (Nov. 3, 2016) ("'Other paper describing injuries and other damages that seem likely to exceed the amount in controversy requirement, but which do not show unequivocally that the requirement is met, are insufficient to trigger the removal clock.'") (*quoting Darensburg v. NGM Ins. Co.*, No. 14-1391, 2014 WL 4072128, at * 2 (E.D. La. Aug. 13, 2014)).
[39] *See* 28 U.S.C. § 1446(b)(3).
[40] *Elkins,* 2019 WL 2096126, at *4, n. 22, *citing Chandler*, 2014 WL 1096365, at *5 (*citing Cole ex rel. Ellis v. Knowledge Learning Corp.*, 416 F. App'x. 437, 440 (5th Cir. 2011) (unpubl.)).

Plaintiffs' reliance on language from *Shelton,* 2018 WL 1998341, *Thibodeaux,* 2016 WL 4055660, *and Thomas Louis Dreyfus Commodities*, 2016 WL 1317937 at R. Doc. 3-1, p. 4 is misplaced, as those holdings relate to the issue of whether a defendant has met its burden of showing, by a preponderance, that the amount in controversy exceeds the jurisdictional threshold. That inquiry, however, is a separate question from whether an "other paper" (received after a defendant's receipt of the initial pleading) was "unequivocally clear and certain" as to trigger the 30-day deadline to remove provided in § 1446(b)(3).[41]

In *Manieri v. CR England*,[42] when confronted with similar arguments, that court determined that neither the discovery responses, nor medical records evidencing a surgical recommendation without an estimate for the cost of the surgery, were sufficient to meet the unequivocally clear and certain standard:

> In the first set of discovery responses, received on September 19, 2018, the plaintiff disclosed that: (1) her injury was unresolved, and she planned to continue further treatment; (2) she had already incurred $ 14,641.20 on treatment and lost $ 4,014.18 in past wages; (3) her physician recommended cervical epidural steroid injections,

---

[41] *See Mumfrey*, 719 F.3d at 400 (distinguishing as inapposite "amount dispute" cases holding that removal was appropriate where jurisdictional amount was "facially apparent"). *See also*, *Elkins*, 2019 WL 2096126 at *4, n. 24, *citing Daniel*, 2016 WL 6562073, at *5, n. 5 (noting that while none of the discovery responses or deposition testimony triggered the 30-day period of § 1446(b)(3), plaintiff's injuries and treatment (including a scheduled lumbar fusion surgery) satisfied the amount in controversy requirement) (collecting cases); *Chandler*, 2014 WL 1096365 at *6 (finding that plaintiff's discovery responses, wherein plaintiff claimed, *inter alia*, injuries to her knee, leg, back, and neck and that she would likely require knee surgery were sufficient to meet defendants' burden of establishing by a preponderance that the amount in controversy exceeded the jurisdictional minimum but that none of the documents relied upon triggered the 30-day deadline of § 1446(b)(3) because such documents did not meet the "unequivocally clear and certain" standard). Plaintiffs concede that the amount in controversy requirement for federal subject matter jurisdiction is met here, and the combination of Suha's multiple bulging and herniated discs, past medical expenses of about $30,000, injections, and surgery recommendation is sufficient to meet Defendants' burden with respect to Suha. *See Espadron v. State Farm Mut. Auto. Ins. Co.,* No. 10-0053, 2010 WL 3168417, at *3 (E.D. La. Aug. 9, 2010) ("A review of these cases shows that the distinguishing factor between cases finding remand to be appropriate and cases denying remand is the presence of a surgical recommendation. Where the plaintiff has received a surgical recommendation, federal courts generally find there to be sufficient damages to support diversity jurisdiction; where there has been no surgery recommendation, federal courts generally find there to be insufficient damages to support diversity jurisdiction.") (citations omitted).  As such, supplemental jurisdiction exists over Hakeem and Ameelia's personal injury claims and the loss of consortium claims, which arise out of the same case or controversy that allegedly caused Suha's damages and injuries but which do not independently meet the jurisdictional threshold, per *Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 566-67, 125 S.Ct. 2611, 2625, 162 L.Ed.2d 502 (2005).
[42] No. CV 19-2805, 2019 WL 2022535 (E.D. La. May 8, 2019).

9

> although she wanted "time to think about injections," and (4) she had been referred to another doctor to consult regarding whether she would be a candidate for surgery. Although the defendant might have been able to infer from these admissions that the amount in controversy requirement was satisfied, because it "was not unequivocally clear and certain, the thirty-day clock did not begin running when [C.R. England] received these discovery responses." See *Green v. Geico Gen. Ins., Co.*, No. 15-3968, 2015 WL 5971760, at \*5, 2015 U.S. Dist. LEXIS 139887, at \*13 (E.D. La. Oct. 14, 2015).
>
> Among the updated medical records C.R. England received on February 21, 2019 include the opinion of Dr. Eric Oberlander that Manieri's cervical disc bulges require a C4-7 ACDF surgery to correct, and Dr. Domangue's report that Manieri intends to proceed with the cervical epidural steroid injections he had previously recommended. While the updated medical records indicate that Ms. Manieri is considering cervical disc surgery and will undergo epidural steroid injections, neither these documents (nor any of the defendant's other submissions) refer to the cost of such treatment. *See Smith v. Wal-Mart Louisiana, LLC*, No. 13-2368, 2013 U.S. Dist. LEXIS 127080, at \*10, 2013 WL 4781778 (W.D. La. Sept. 5, 2013) (finding that recommendation for cervical disc surgery, in the absence of a specific damages estimate, did not trigger second 30-day removal period); *see also Johnson*, 2019 U.S. Dist. LEXIS 44968, at \*11, 2019 WL 1271053 ("[I]f a defendant has to conduct independent research by consulting 'quantum books,' then the discovery responses are not sufficiently unequivocally clear and certain to trigger the 30-day removal period."). Because Manieri's updated medical records do not constitute "unequivocally clear and certain" evidence that the amount in controversy exceeds $ 75,000, the 30-day time limit to remove under § 1446(b)(3) was not triggered on February 21, 2019 when C.R. England received the records.[43]

The same reasoning applies here. Suha's discovery responses indicating that her injury was unresolved and that she intended to continue treatment, her medical records ultimately showing medical expenses of $31,933 and her deposition testimony indicating a surgical recommendation from Dr. Ferachi, but with no information regarding the cost of the surgery, are not sufficient to meet the unequivocally clear and certain standard to trigger the 30-day removal

---

[43] *Manieri*, 2019 WL 2022535, at \*3.

10

clock. Courts, including this one, have consistently held that the 30-day removal deadline of §1446(b)(3) is not triggered where a defendant must parse medical records and rely on case law to support its position that the amount in controversy exceeds $ 75,000.00.[44]

Even the medical records upon which Defendants rely,[45] would not be sufficient to trigger the removal clock, notwithstanding the recommendation of an arthroscopic surgery, because there is no evidence regarding the cost of the surgery. At most, however, this makes the removal premature, which does not warrant remand. Where, as here, a removing defendant can establish by a preponderance of the evidence that the amount in controversy likely exceeds the jurisdictional threshold, the case may be removed even though the 30-day deadline set out in § 1446(b)(3) is not yet triggered.[46]

### III. Recommendation

Accordingly, it is **RECOMMENDED** that the Motion to Remand,[47] filed by Plaintiffs Suha and Abdallah Shehadeh, individually, and on behalf of their minor children, be **DENIED** as

---

[44] *Elkins,* 2019 WL 2096126, at *4, n. 25, *citing Daniel*, 2016 WL 6562073, at *5 (finding time period in § 1446(b)(3) was not triggered by plaintiff's discovery responses or plaintiff's representation that she was going to have lumbar surgery) (*citing Bosky*, 288 F.3d at 210); *Smith,* 2013 WL 4781778 (rejecting plaintiff's contention that recommendation for cervical disc surgery triggered the second 30-day removal period); *Scott*, 2015 WL 2137458, at *5 (finding plaintiff's medical records and deposition testimony did not make it unequivocally clear and certain that the amount in controversy requirement was satisfied and explaining that "[d]efendants would have to speculate or conduct their own additional investigation, as highlighted by the competing 'quantum' cases submitted by both parties, to determine whether the amount in controversy requirement was satisfied...."). *See also Hoffman v. Oyeket*, No. 17-4058, 2017 WL 2963226, at *3 (E.D. La. July 12, 2017) (remanding suit where there was no "clear and certain 'other paper' showing over $ 75,000 is in controversy" and noting "'[o]ther papers describing injuries and other damages that seem likely to exceed the amount in controversy requirement, but not showing unequivocally that the requirement is met, are insufficient to trigger the removal clock.'") (quoting *Green v. Geico General Ins. Co.*, No. 15-3968, 2015 WL 5971760, at *3 (E.D. La. Oct. 14, 2015)).
[45] R. Doc. 1-3.
[46] *See Chandler*, 2014 WL 1096365, at *6 ("Section 1446 'does not say anything about removals that occur too soon.' If, before the 30-day clock starts, a defendant can demonstrate by a preponderance of the evidence that the jurisdictional threshold is met, he or she may remove without being required to 'unlock' the 30-day window by presenting 'unequivocally clear and certain' evidence.") (quoting *Robinson v. Quality Ins. Co.*, No. 86-0282, 633 F.Supp. 572, 576 (S.D. Ala. 1986)).
[47] R. Doc. 3.

the Notice of Removal was timely filed in this case. In the event this Recommendation is adopted,

**IT IS FURTHER RECOMMENDED** that the matter be referred for a scheduling conference.

Signed in Baton Rouge, Louisiana, on February 24, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**